```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CHEVIS PARKS,<br><br>    Defendant. | Cv. No. 04-3064-B/An<br>Cr. No. 02-20384-B |

```
         ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
              ORDER DENYING CERTIFICATE OF APPEALABILITY
                                AND
            ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
```

Defendant Chevis Parks, Bureau of Prisons inmate registration number 18610-076, who is currently an inmate at the Federal Medical Center in Butner, North Carolina, through counsel, filed a motion pursuant to 28 U.S.C. § 2255 on December 21, 2004.[1]

On October 9, 2002, a federal grand jury returned a single-count indictment charging that Parks, a convicted felon, knowingly possessed a Glock, model 27, semiautomatic pistol on or about May 14, 2002, in violation of 18 U.S.C. § 922(g). Parks retained attorney Scott Crawford to represent him in connection with that charge. On May 6, 2003, pursuant to a written plea agreement, Parks appeared before

---

[1] Parks originally submitted his motion in his criminal case, with a motion seeking leave to file an untimely § 2255 motion. The Court issued an order on January 11, 2005 directing that the motion be filed as a new civil action as of the date received. The order further stated that the Court cannot address the timeliness of a motion before it is filed. Now that the motion has been filed, it is clearly timely.

this judge to enter a guilty plea to the sole count of the indictment. On August 27, 2003, two new attorneys, William D. Massey and Lorna S. McCluskey, filed notices of appearance on behalf of Parks.[2] The Court conducted a sentencing hearing on December 17, 2003, at which time Parks was sentenced as an armed career criminal to one hundred eighty (180) months imprisonment, to be followed by a four-year period of supervised release.[3] Judgment was entered on December 23, 2004. Parks did not take a direct appeal.

Parks has now filed a § 2255 motion that raises the following issues:

1. His guilty plea was based on the representation of his attorney that he would be sentenced to no more than 120 months and would be eligible for home confinement or probation; and

---

[2] Although attorney Crawford did not file a motion seeking leave to withdraw, he did not subsequently appear on Parks's behalf in the criminal matter.

[3] Pursuant to § 2K2.1(a)(2) of the United States Sentencing Guidelines ("U.S.S.G"), the base offense level for unlawful possession of a firearm is 24 where the defendant has at least two felony convictions for either a crime of violence or a controlled substance offense. Parks received a four-point increase, pursuant to U.S.S.G. § 2K2.1(b)(5), because he possessed the firearm in connection with another felony offense, unlawful possession of a controlled substance. (A state drug charge against Parks for this offense was pending at the time of sentencing.) Parks received a three-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b), resulting in a total offense level of 25. Given his presumed criminal history category of III, the guidelines would have called for a sentencing range of 70-87 months.

However, because of his prior convictions for aggravated assault (two counts), aggravated robbery, and aggravated burglary, Parks was eligible to be sentenced as an armed career criminal pursuant to U.S.S.G. § 4B1.4. Accordingly, pursuant to U.S.S.G. § 4B1.4(b)(3)(A), the base offense level was 34 because Parks possessed the weapon in connection with a controlled substance offense. After the three-point reduction for acceptance of responsibility, the total offense level was 31. Pursuant to U.S.S.G. § 4B1.4(c)(2), Parks was assigned a criminal history category of VI because he possessed the weapon in connection with a controlled substance offense. The guidelines called for a sentencing range of 188-235 months. The Court departed downward from that range, pursuant to U.S.S.G. §§ 5K2.11 (avoidance of a greater perceived harm) and 5K2.12 (duress), because the offense conduct was partially motivated by Defendant's concern with protecting himself from the individual who had shot him in 2001, severing his spinal cord.

    2.    His previous attorney, Scott Crawford, was indicted for conspiracy to distribute narcotics and money laundering.

The Court will address these issues in turn.

With respect to the first issue, the motion asserts as following:

    1.    That the Movant, on the advice and representation of his attorney at the time, entered a plea of guilty of May 6, 2003 and was sentenced to a period of 180 months on December 17, 2003.

    2.    That prior to the entry of his plea of guilty the Movant's attorney at that time on several occasions and in the presence of others advised the Movant that the Movant would be sentenced to no more than 120 months and would be eligible for home confinement or probation[.]

    3.    That upon receipt of the draft of the Presentence Investigation Report the Movant realized that he had been seriously misled and retained new counsel.

Parks has sworn to the truth of the contents of the motion, pursuant to Rule 2(a)(5) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").

As a preliminary matter, Parks's presentation of this issue does not comply with Rule 2(b) of the Section 2255 Rules, which requires, _inter_ _alia_, that the motion must "(1) specify all grounds for relief available to the moving party" and "(2) state the facts supporting each ground." Although the Sixth Circuit has not had occasion to address the pleading standards applicable to § 2255 motions, the Second Circuit has stated as follows:

> To warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. . . . Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.

United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) (citations omitted); accord Taylor v. United States, 287 F.3d 658, 661 (7th Cir. 2002) (noting that, while notice pleading is the standard in ordinary civil litigation, "Rule 2(b) departs from Rule 8 [of the Federal Rules of Civil Procedure] by requiring some fact pleading").[4] Although Parks is apparently unhappy with the sentence he received and the fact that he is required to serve it in a prison, he does not provide any factual detail about the representations allegedly made by his attorney, including the names of the persons who allegedly heard the representations and the approximate date on which such representations were made. He also does not state that, if only he had realized the sentence he was likely to receive and the fact that it would likely be served in a prison, he would not have entered a guilty plea. Finally, he does not explain why, once he received the presentence report and retained new counsel, he did not seek to withdraw his guilty plea.

Parks did not file a motion to withdraw his guilty plea prior to the entry of judgment, and he did not challenge the intelligence of his plea on direct appeal. A § 2255 motion is not a substitute for a direct appeal. Sunal v. Lange, 332 U.S. 174, 178 (1947). Generally, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1988). Because Parks did not raise this issue on direct appeal, even though

---

[4] Although these decisions interpreted the previous version of Rule 2(b), the advisory committee notes make clear that the 2004 amendments "are intended to be stylistic and no substantive change is intended," with certain exceptions not applicable here.

4

he had all the information he now asserts in support of this motion, he has procedurally defaulted this claim. Id.; see also El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002).

Although there are two exceptions to the procedural default rule, neither is applicable here. A defendant can overcome a procedural default if he demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously, Bousley, 523 U.S. at 622, or he establishes that a constitutional error "'has probably resulted in the conviction of one who is actually innocent,'" id. at 623 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). In this case, Parks cannot demonstrate good cause for his failure to raise this issue on direct appeal, because he knew, as soon as the presentence report was issued, the sentence he was likely subject to and the fact that he was likely to serve it in a prison. Moreover, Parks has presented no argument that he is actually innocent of the offense to which he entered a guilty plea, and such an argument is unavailable to him in light of ¶ 2 of the Plea Agreement, which states that "CHEVIS PARKS agrees that he is pleading guilty because he is in fact guilty of the offense charged in the Indictment" (emphasis omitted); see also 05/06/03 Tr. at 12-14 (Parks's agreement with the Government's statement of the facts underlying the charge).

Finally, on a substantive level, this issue is entirely lacking in merit. At the change of plea hearing, Parks was advised of the penalties he could be subject to, including the possible effect of being designated an armed career offender:

> *THE COURT:* The potential penalty for violation of [18 U.S.C. § 922(g)] is not more than ten years in prison, not more than a $250,000 fine or both, not more than a

>   three-year period of supervised release, and a special assessment of $100. <u>However, if you have three prior convictions for violent felonies or serious drug offenses, then the potential penalty could be not less than, in other words, a minimum of 15 years in prison</u>, a fine of not more than $250,000 or both, a term of supervised release of not more than five years, and a special assessment of $100.
>
>   Do you understand the potential penalties involved, Mr. Parks?
>
>   *THE DEFENDANT:* Yes, sir.
>
>   *THE COURT:*   Now, Mr. Parks, do you understand that any sentence that you might receive in this case would be without parole?
>
>   *THE DEFENDANT:* Yes, sir.

05/06/03 Tr. at 7-8 (emphasis added). Parks had to have been aware of his prior felony convictions, and the plea colloquy clearly put him on notice that he was facing a minimum of fifteen (15) years, or one hundred eighty (180) months imprisonment.

Parks also acknowledged that he had voluntarily entered into the Plea Agreement, <u>id.</u> at 8-9, and that there could be no guarantee as to what sentence he would receive:

>   *THE COURT:*   Now, as I've indicated, the court is not bound by the government's recommendation here. And if the court accepts your plea today, even if you disagree with my sentencing at the sentencing hearing, you would not be able to withdraw your plea. In other words, even if the government's recommendation was not accepted by the court, you would not be able to withdraw your plea at a later date. Do you understand that, sir?
>
>   *THE DEFENDANT:* Yes, sir.
>
>   *THE COURT:*   And do you understand that the court will be determining, will be determining the appropriate guideline range, and that you must be sentenced within that range in virtually all circumstances?
>
>   *THE DEFENDANT:* Yes, sir.

Id. at 10-11; see also id. at 11-12 (acknowledging that the court may depart upward or downward from the guideline range). Finally, Parks stated under oath that no promises had been made to him as to what his sentence would be:

> *THE COURT:*   Now other than the conversation you've had with your lawyer about what guideline range may apply, Mr. Parks, has anybody made a promise or prediction to you about what your sentence will be if you plead guilty?
>
> *THE DEFENDANT:* No, sir.

Id. at 12.

In light of Parks's sworn testimony during the plea colloquy, the vague, self-serving statements in the instant motion are insufficient to warrant an evidentiary hearing. Parks does not argue that he had a viable alternative to a guilty plea. Parks, who is partially paralyzed and uses a wheelchair, was sitting on the weapon in question at the time of his arrest on a drug charge, and Parks himself alerted the arresting officers to the presence of the weapon as they were placing him in the squad car. Under those circumstances, it would appear that Parks was best served by pleading guilty in order to receive the three-point reduction for acceptance of responsibility.[5]

Parks's first issue is without merit and is DISMISSED.

In his second issue, Parks notes that his former attorney, Scott Crawford, was indicted for conspiracy to distribute narcotics

---

[5] If Parks had been convicted after a trial, he would not have been eligible for a reduction for acceptance of responsibility. In that case, his total offense level would have been 34. Given a criminal history category of VI, the guidelines called for a sentencing range of 262-327 months.

and money laundering.[6] The motion does not explain the significance of this fact, however. There is no allegation that Mr. Crawford's admitted criminal activities involved his representation of Parks.

Parks also does not explicitly assert that, because his attorney was, some months after his representation ceased, indicted for a broad range of crimes, plead guilty, and was subsequently imprisoned and, presumably, suspended or disbarred,[7] he necessarily rendered ineffective assistance of counsel, in violation of the Sixth Amendment. Parks cites no authority for this proposition. The Supreme Court has found <u>per se</u> ineffective assistance only when a criminal defendant is, for all practical purposes, unrepresented. <u>Compare Rodriguez v. United States</u>, 395 U.S. 437 (1969) (<u>per se</u> ineffective assistance found where a lawyer fails to file a notice of appeal despite being asked to do so by a convicted defendant) <u>with Bell v. Cone</u>, 535 U.S. 685, 696-98 (2002) (no <u>per se</u> ineffective assistance where defense counsel did not present evidence or argument during the

---

[6] Crawford was a party to two criminal cases in this district. In <u>United States v. Crawford</u>, No. 04-20103-1-D (W.D. Tenn.), Crawford was indicted on various charges on March 2, 2004 and, on March 15, 2005, he entered guilty pleas to charges that he violated 18 U.S.C. § 371 (count 2), 18 U.S.C. §§ 1510(a) & 2 (counts 3 & 5), 18 U.S.C. §§ 666(a)(2) and 2 (counts 4 & 6), and 18 U.S.C. § 1512(c)(2) & 2 (count 7). In <u>United States v. Crawford</u>, NO. 04-20150-D (W.D. Tenn.), Crawford was indicted on March 23, 2004 and, on March 15, 2005, he entered guilty pleas to charges that he violated 18 U.S.C. §§ 1956(a)(1) and (2) (counts 1-6), 18 U.S.C. § 1957 & 2 (counts 7-12), and 18 U.S.C. §§ 2113(a) & 2 (counts 13-15). District Judge Bernice B. Donald conducted a sentencing hearing on August 19 and 22, 2005, at which time Crawford was sentenced to a total of 71 months imprisonment, to be followed by a four-year period of supervised release. Both cases are currently on appeal.

[7] An attorney licensed in Tennessee is automatically suspended upon proof that he has entered a plea of nolo contendere or a plea of guilty to a serious crime. Tenn. Sup. Ct. R. 9, § 14.1. The Board of Professional Responsibility may impose further discipline, but there may not be a disciplinary hearing prior to the conclusion of all appeals. <u>Id.</u>, §§ 14.4. Likewise, pursuant to this Court's Local Rule 83.1(e)(2), an attorney who "is convicted of or pleads nolo contendere to a felony or is disbarred from practice in any state or federal court" is automatically suspended from practicing in federal court in this district.

sentencing phase of a capital trial); United States v. Cronic, 466 U.S. 648, 663-66 (1984) (no per se ineffectiveness arising from counsel's age, recent admission to the bar, lack of criminal or trial experience, and limited time to prepare for trial); Smith v. Robbins, 528 U.S. 259 (2000)(no per se ineffectiveness where appellate counsel failed to file merits brief). Parks also cannot rely on decisions outside the Sixth Circuit finding per se ineffective assistance in some circumstances where a criminal defendant is represented by an attorney who is not properly licensed, see, e.g., Solina v. United States, 709 F.2d 160, 169 (2d Cir. 1983),[8] because there has been no showing that Crawford was not licensed to practice law in the State of Tennessee at the time he represented Parks.[9] Parks also cannot rely on cases finding per se ineffective assistance where a lawyer is implicated in a defendant's criminal activity, see, e.g., United States v. Cancilla, 725 F.2d 867, 870 (2d Cir. 1984), because the motion does not suggest that Crawford and Parks were involved in a joint criminal enterprise.

The conduct of Parks's first attorney does not constitute per se ineffective assistance of counsel. The motion also fails to set forth any facts suggesting that counsel's performance failed to meet

---

[8] This rule has not been universally adopted. See, e.g., Hurel Guerrero v. United States, 186 F.3d 275, 279-81 (2d Cir. 1999) (defense counsel who was suspended from practicing before district court that sentenced defendant not per se ineffective where he was a member of the New York bar); United States v. Maria-Martinez, 143 F.3d 914, 916-19 (5th Cir. 1998) (declining to apply per se rule to case in which defendant's attorney had been barred from practicing before courts in that circuit).

[9] These cases also have not been adopted in the Sixth Circuit. See United States v. Shabazz, 263 F.3d 603, 612-13 (6th Cir. 2001); Blanton v. United States, 896 F. Supp. 1451, 1457-63 (M.D. Tenn. 1995) (representation by unlicensed advocate not a per se violation of the Sixth Amendment where lawyer afforded competent representation), aff'd, 94 F.3d 227 (6th Cir. 1996).

the standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The second issue is without merit and is DISMISSED.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Section 2255 Rules. Therefore, the Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and therefore, his motion is DENIED.

Consideration must also be given to issues that may occur if the Defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to

10

deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003)(quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[10]

In this case, for the reasons previously stated, Defendant's claims are plainly lacking in substantive merit and, therefore, he

---

[10] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). Kincade, 117 F.3d at 952.[11] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if Movant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma

---

[11] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.

pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

      IT IS SO ORDERED this 15th day of December, 2006.

                                    s/ J. DANIEL BREEN
                                    UNITED STATES DISTRICT JUDGE